United States District Court
Southern District of Texas
**ENTERED**
October 10, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-cv-00250 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This habeas case, filed pursuant to 28 U.S.C. § 2254, involves a claim that Petitioner Jewell Thomas was denied due process in a prison disciplinary proceeding. For the reasons discussed below, the undersigned recommends that the district court DISMISS Petitioner's action in its entirety, and that the district court deny a certificate of appealability. Petitioner has failed to exhaust some of his claims and fails to demonstrate that others are cognizable on federal habeas review; he fails to demonstrate entitlement to relief on his remaining claim.

### A. *Jurisdiction.*

This Court has jurisdiction over this habeas action pursuant to 28 U.S.C. § 1331. A habeas action may be filed either in the district in which the petitioner is in custody or in the district in which the petitioner was convicted and sentenced. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000). In this case, Petitioner is in custody at the Texas Department of Criminal Justice-Correctional Institutions Division's ("TDCJ's") McConnell Unit in Beeville, Texas. Beeville is located in Bee County, in the Corpus Christi Division of the

Southern District of Texas. *See* 28 U.S.C. § 124(b)(6). Thus, this matter is properly before this Court.

### B. Proceedings.

Petitioner filed this habeas action pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Respondent submitted an answer, accompanied by an appendix containing documents relevant to this case. (Doc. Nos. 15, 16.) Petitioner responded to Respondent's answer. (Doc. No. 18.) After considering the pleadings, the Court determined that it needed additional information from both parties and ordered Petitioner and Respondent to submit additional matters. (Doc. No. 19.) The information sought by the Court, and the parties' responses, are further discussed below.[1] After submission of the requested information, Respondent sought and obtained the Court's permission to submit additional briefing, and provided that briefing on August 16, 2023. (Doc. Nos. 22, 23, 25.) Petitioner responded to that briefing on September 1, 2023. (Doc. No. 26.)

### C. Undisputed facts about the disciplinary hearing.

The TDCJ offense report reflects that Petitioner was accused of committing the offense of "assaulting another person, who is not an offender, with a weapon that results in a non-serious injury or no injury." (Doc. No. 15, pp. 5, 21.) TDCJ's Disciplinary Rules and Procedures for Offenders, Attachment A (Aug. 2019 ed.) provides that this is a "Level 1" offense. *See* Doc. No. 15, p. 21.[2] Petitioner allegedly "threw" a plastic food tray at a TDCJ correctional officer through a cell's food tray slot, striking the officer in the hand but not causing any injury. *Id*. at 6. This

---

[1] Although afforded the opportunity to do so, *see* Doc. No. 19, p. 2, neither party objected to the authenticity or correctness of the materials submitted pursuant to the Court's order.

[2] Respondent's brief contains excerpts of the Disciplinary Rules and Procedures. The undersigned takes judicial notice of the entire publication, which is available online at https://www.tdcj.texas.gov/documents/cid/Disciplinary_Rules_and_Procedures_for_Offenders_English.pdf (last visited October 3, 2023).

incident allegedly occurred on February 8, 2022. *Id.* The offense report states that Petitioner said: "I did it but I never will do it again." *Id.* at 7.

Petitioner was notified of his disciplinary hearing on February 9, 2022, the day after the alleged incident. (Doc. No. 15, p. 5.) He pleaded not guilty to the assault charge. *Id.* Petitioner's disciplinary hearing took place on March 7, 2022. *Id.* Petitioner was afforded the services of a counsel substitute at the hearing. *Id.* With Petitioner's consent, the disciplinary hearing officer adjusted the charge to a lesser one – assaulting another person, who is not an offender, *without* a weapon that results in non-serious or no injury, because the hearing officer believed that charge was more appropriate. *Id.* at 5, 10; *see also id.* at 15. Petitioner pleaded guilty to that offense, and the hearing officer accordingly found him guilty. *Id.* at 5. The hearing officer's worksheet for the proceeding reflects that Petitioner stated: "The officer brought me my tray. I was [hearing] ticking noises as he came closer there was a bomb inside the tray. I didn't want to touch it. I picked it up and threw the tray through the slot I'm guilty of that." *Id.* at 10. The record of the hearing also reflects that Petitioner said: "I didn't mean to hit the officer. I didn't know his hand was there." *Id.* at 5.

Petitioner received several types of punishment. He lost 120 days of good time credit, 45 days of recreation, 60 days of commissary, and 60 days of access to the offender telephone system. His classification was downgraded from L1 to L3, and his contact visit privileges were suspended for four months. (Doc. No. 15, p. 5.)

The report of the disciplinary hearing reflects that the hearing officer excluded certain documentation from the hearing. The hearing officer wrote: "MH [presumably mental health] documents denied due to irrelevant. CS [presumably counsel substitute] object referred to MH."

(Doc. No. 15, p. 5; *see also id*. at 10.)  The exclusion of these documents forms the basis for one of Petitioner's claims here.

### D. *Petitioner's Step One grievance.*

After the disciplinary hearing, Petitioner filed a Step One grievance.[3]  The claims that Petitioner raised (or did not raise) in that grievance are important to the resolution of this case, so they are listed here:

- Petitioner claimed that he was not mentally responsible for his actions.  He asserted that the McConnell Unit's mental health team "failed to protect me from myself by not responding to my numerous pleas for help while suffering with my mental illnesses.  I disagree with the punishment to give me as my mental health problems caused me to get the disciplinary report which I now appeal."  (Doc. No. 15, p. 14.) Petitioner explained that for the past 25 years he had been "suffering with PTSD, schizophrenia and major depressive disorder w/ psychotic features.  Mental health has not properly addressed my severe conditions."  *Id*.  Petitioner stated that he had raised his mental health concerns through numerous sick call requests and grievance forms.  *Id*.  He added: "I was not in my right mind and not responsible for my actions."  *Id*. He stated further: "I was denied due process by not being properly treated for mental health disorders."  *Id*. at 15.

---

[3] TDCJ employs a two-step grievance process.  Summarized, in Step One the offender lodges a formal complaint after attempting to resolve the matter informally.  Step Two is intended for offenders who are dissatisfied with the outcome of their Step One grievance.  *See* Texas Department of Criminal Justice, Offender Orientation Handbook (Feb. 2017 ed.), at 73-75, https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf (last visited Sept. 27, 2023).  The grievance process is the means for appealing a conviction in a disciplinary hearing.  *See id*. at 73.  The undersigned takes judicial notice of the Offender Orientation Handbook.

- Petitioner contested the hearing officer's exclusion of mental health documentation. He contended that the disciplinary hearing officer "would not allow me to present evidence of mental health complaints.  "I am requesting a new hearing based on my inability to provide evidence that may produce a different outcome."  (Doc. No. 15, pp. 14, 15.)  "Mental health documentation should have been admitted and considered."  *Id*. at 15.

- Petitioner challenged the alleged exclusion of witness testimony by the hearing officer.  He asserted that "[i]n a disciplinary proceeding in which a prisoner's mental state is at issue a hearing officer is required to consider evidence regarding my condition.  The hearing officer denied [my] right and opportunity to call my witness which is a mental health team member.  My mental health complaints should have been taken into account."  (Doc. No. 15, p. 15.)  Petitioner argued that his mental competence and mental illness was required to be considered during the disciplinary process, and that the failure to do so was a denial of due process.  *Id*.

- Petitioner claimed that TDCJ did not follow its procedure to "clear [Petitioner] through mental health" before placing him in solitary confinement.  This solitary confinement, Petitioner contended, exacerbated his mental health condition, culminating in Petitioner's disciplinary case.  (Doc. No. 15, p. 14.)  He asserted: "Based on Policy I should have been on the mental health case-load.  I never talked to mental health after receiving my disciplinary case."  *Id*.

- Petitioner claimed that he was punished without due process because of the housing conditions he allegedly endured while in pre-hearing detention.  (Doc. No. 15, p. 14.)

- Petitioner asserted that his Eighth Amendment rights were violated when he was placed into a lockdown cell as punishment for his symptoms of untreated mental illness.  He stated: "My punishment is too severe.  I am being punished for being mentally ill."  *Id*.

- Petitioner asserted that he was "tricked" into pleading guilty to the "lesser charge" of assault without a weapon because he was advised that the lesser charge "would bring leniency," thus causing him to make an admission of guilt.  "I would never [have] pled guilty to my punishment," he said.  *Id*.

The Assistant Warden rejected Petitioner's claims in the Step One grievance:

Major Disciplinary Case #20220096506 has been reviewed and there were no procedural errors identified.  There is sufficient evidence to support a guilty verdict and the punishment imposed is within established guidelines.  Therefore, there is no reason to warrant overturning this case.  No further action is warranted by this office.

(Doc. No. 15, p. 15.)

### E.  *Petitioner's Step Two grievance.*

Petitioner then filed a Step Two grievance.  (Doc. No. 15, pp. 16-17.)  In the Step Two grievance, Petitioner raised the following claims:

- Petitioner asserted that he was denied the opportunity to present written documentation of his mental health condition.  He stated: "This paperwork consisted of mental health's failures to place me on [its] caseload despite multiple complaints of symptoms of PTSD, depression and schizophrenia.  …  This was clearly a due process denial."  (Doc. No. 15, p. 16.)

- Liberally construed, Petitioner contended that he was not mentally responsible for his actions.  He stated: "I admitted to throwing a 'bomb' to save my life.  I continue to

suffer with untreated mental health.  My untreated mental illness contributed to the offense ….”  (Doc. No. 15, p. 16.)  He added: “It is the mental health team’s failures that caused me to be a danger to myself and others based on inadequate treatment.”  *Id*. at 17.

- Petitioner alleged that his “patient restriction history” had reflected since November 2020 that security staff was required to consult with a representative of the medical department before disciplinary action could be taken against Petitioner, and that TDCJ officials failed to abide by that restriction when they placed him in pre-hearing detention under allegedly inhumane conditions.  (Doc. No. 15, p. 16.)

- Petitioner asserted that the disciplinary hearing officer and the warden “excluded me from participating in the disciplinary hearing by denying my mental health paperwork (evidence) and taking it into account.  This violates both ADA and Rehabilitation Act laws.”  Petitioner also alleged that the warden thereby exhibited “deliberate indifference.”  (Doc. No. 15, p. 17.)

The Step Two grievance was also denied:

Major disciplinary case #20220096506 has been reviewed.  The disciplinary charge was appropriate for the offense and the guilty verdict was supported by a preponderance of the evidence.  All due process requirements were satisfied, and the punishment assessed by the Disciplinary Hearing Officer was within agency guidelines.  No further action is warranted in this matter.

(Doc. No. 15, p. 17.)

### F. *Petitioner's claims in this habeas action.*

Liberally construed,[4] Petitioner alleges in this habeas action that he was not mentally responsible for his actions: he asserts that his conduct "stemmed from a psychotic episode." (Doc. No. 1, p. 6.)  He alleges that he was denied due process in his disciplinary hearing because he was denied the opportunity to call witnesses or submit documentary evidence regarding his alleged mental illness.  *Id.*  Petitioner contends that the denial of witness testimony also constituted "disability discrimination" in violation of the Americans with Disabilities Act and the Rehabilitation Act.[5]  Petitioner further alleges that TDCJ failed to follow its own policy by subjecting him to the disciplinary hearing without first obtaining clearance from a TDCJ mental health team.  *Id.* at 7.

Petitioner asks for the "reversal" of his disciplinary conviction.  In a "demand letter," he asks for a "line-class increase of a minimum L1," adjustment of his custody classification to "G4 at minimum," the expungement of the disciplinary charges, and monetary relief of $100,000 for alleged "mental anguish, humiliation, embarrassment, pain and suffering."  (Doc. No. 12.)

### G. *Respondent's contentions.*

Respondent contends, in opposition, that Petitioner's claims that he was prevented from calling witnesses in his own defense, that TDCJ violated its own policy by bringing Petitioner to a disciplinary hearing without prior mental health clearance, and that the hearing violated his ADA and RA rights, are unexhausted and procedurally defaulted because Petitioner did not raise

---

[4]  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

[5]  *See generally* Americans with Disabilities Act, 42 U.S.C. § 12112 ("ADA"); Rehabilitation Act, 29 U.S.C. 794 ("RA").

them in both steps of his grievance.  (Doc. No. 16, pp. 6-9.)  Thus, Respondent argues, Petitioner cannot seek habeas relief for those claims here.

Respondent also asserts that Petitioner's reduction in time-earning classification and loss of privileges do not present federal due process concerns.  (Doc. No. 16, pp. 9-12.)  Respondent further contends that due process requirements were sufficiently observed with regard to Petitioner's loss of good time credit.  *Id*. at 12-18.  Finally, Respondent urges that violations of TDCJ policies or procedures, or violations of the ADA or RA, are not cognizable on habeas review in the context of an appeal of Petitioner's disciplinary hearing.  *Id*. at 18-22.

With regard to Petitioner's claim that he was denied the right to present documentary evidence, Respondent contends that Petitioner was afforded the right to present evidence, but that the disciplinary hearing officer permissibly excluded evidence that the officer deemed to be irrelevant or non-probative.  (Doc. No. 25, pp. 4-9.)  Respondent further appears to assert that Petitioner's mental state was irrelevant to the charged offense, because "[i]ntent is not an element" of the charged offense of assault.  *Id*. at 7.  Finally, Respondent argues that Petitioner's claim that he was denied witness testimony must be rejected because Petitioner did not request prior to the hearing the production of any witnesses, because Petitioner has not shown that those witnesses were available to testify, because the putative witnesses' testimony would have been cumulative to the documentary evidence that Petitioner states he attempted to introduce, and that Petitioner has failed to show that the putative witnesses would have been able to testify about Petitioner's mental state at the time of the alleged offense.  *Id*. at 9-13.

### H. *The Court's order for more information, and the parties' responses.*

After reviewing the parties' filings, the Court determined that it needed additional information in order to adequately assess this case. *See* Rule 7(a), Rules Governing Section 2254 Cases in the United States District Court. The Court gave specific directions to each party:

- Respondent was ordered to file with the Court the audio recording of Petitioner's disciplinary hearing, or alternatively a transcript of that hearing. (Doc. No. 19, p. 1.)

- Petitioner was ordered to file with the Court the documents he claims to have attempted to submit at the disciplinary hearing. (Doc. No. 19, p. 1.) Petitioner was also ordered to submit an affidavit naming the witnesses he sought to call at the disciplinary hearing and what testimony those witnesses would have provided. The affidavit was also required to state what specific actions Petitioner took to secure the witness testimony: "Be specific: the Court wishes to know <u>who</u> was requested, <u>when</u> they were requested, <u>how</u> they were requested, <u>from whom</u> they were requested, and the <u>result</u> of each such request." (Doc. No. 19, p. 2) (emphasis in original).

In response, Respondent advised the Court that, "after an exhaustive search, TDCJ has been unable to locate the hearing audio" for Petitioner's disciplinary hearing. (Doc. No. 20-1, p. 2.) By affidavit, a TDCJ employee explained that "[a]round this time, the facility was experiencing technical difficulties with the program used to download audio recordings. It is possible the data was lost due to those difficulties." *Id*.

Petitioner, responding to the Court's order, filed a declaration under penalty of perjury (Doc. No. 21) in which he named two McConnell Unit mental health clinicians as the witnesses he sought to call. Petitioner stated that he "expected for one of the two or any other mental health personnel to explain my previous reported symptoms or previous complaints prior to" the

date of the food tray incident and that Petitioner had "a history of mental illness."  *Id*. at 2, 3.
Asked to specify what the witnesses would have said, Petitioner stated: "I believe the witnesses
would have testified that I reported mental health symptoms to them such as hallucinations and
hearing voices."  *Id*. at 2.  Petitioner stated that he "kept telling the Disciplinary Hearing Officer
… to call either of the two on the telephone located on the desk where the hearing was held" but
that the hearing officer denied Petitioner's requests.  *Id*. at 3.

Petitioner also submitted a 22-page packet of documents in response to the Court's order,
representing the written materials he claims to have attempted to submit at the disciplinary
hearing.  (Doc. No. 21-1.)  These documents included:

- A Step One grievance dated January 18, 2022, in which Petitioner stated that he had
  repeatedly requested psychological counseling or psychotherapy (but that he had
  specifically forsworn any psychiatric medication) but that his requests had been denied or
  ignored.  In the grievance, Petitioner requested "transfer to another unit that can provide a
  'higher level' of medical care."  (Doc. No. 21-1, pp. 1-2.)  The copy of this Step One
  grievance submitted by Petitioner does not include the response to that grievance – the
  area allotted for that TDCJ response is blank.  *See id*. at 2.

- A Form I-60, *Inmate Request to Official*, dated June 24, 2021, which Petitioner directed
  to the Mental Health department at TDCJ's Beto Unit, where Petitioner was apparently
  housed at the time.  Petitioner requested a psychotherapist or psychological counselor and
  stated that he was "having symptoms of depression, PTSD, and schizophrenia."  (Doc.
  No. 21-1, pp. 3-4.)

- A Form I-60 dated October 4, 2021, which Petitioner directed to the Mental Health
  department at the McConnell Unit.  Petitioner stated that he had been denied respite from

the heat despite being a "heat restricted inmate" and that he suffered from chronic pain preventing him from engaging in major life activities.  Petitioner also claimed that he was housed in solitary confinement, which was "exacerbating [his] mental illness."  (Doc. No. 21-1, pp. 5-6.)

- A sick call request dated January 12, 2022, which Petitioner directed to the Mental Health department at the McConnell Unit.  Petitioner asked for "a session for psychological counseling and psychotherapy. PTSD, depression and schizophrenia."  (Doc. No. 21-1, p. 7.)  The document is stamped "Scheduled" by a mental health clinician.  *Id.*

- A Form I-60 dated January 6, 2022, which Petitioner directed to the Mental Health department at the McConnell Unit.  Petitioner stated that he fell down a flight of stairs on January 2, and that "as a result I continue to suffer with psychological injuries as earlier stated but now including stress and fear."  (Doc. No. 21-1, pp. 9-10.)  The document is stamped "Scheduled" by a mental health clinician.  *Id.* at 9.

- A Form I-60 dated July 4, 2021, which Petitioner directed to the Mental Health department at the Beto Unit.  Petitioner stated that he was "unable to sleep due to extreme pain and mental illness."  A TDCJ notation on the form reflects that the form was received, and then says "Schedule 7/8/2021."  (Doc. No. 21-1, pp. 11-12.)

- A sick call request dated July 7, 2021, which Petitioner directed to the Mental Health department.  Petitioner stated: "Please make an appt regarding mental health symptoms. Diagnosis: Major Depressive Disorder, PTSD and schizophrenia."  A TDCJ notation on the form states: "Scheduled w/mental health 07/09/2021."  (Doc. No. 21-1, p. 13.)

- A sick call request dated July 1, 2021, which Petitioner directed to the Mental Health department.  Petitioner requested psychological counseling or psychotherapy "to treat my

psychological distress symptoms.  This is my second request."  (Doc. No. 21-1, p. 15.)  A
TDCJ notation on the request states: "Schedule 7/21/2021."  *Id.*

- A Form I-60 dated December 29, 2021, which Petitioner directed to "Mental Health
(Bennett)."  Petitioner stated: "Not for medication!!  Not for Ms. Rea!!"  He requested
the scheduling of a session for "psychological counseling and or psychotherapy.  A sick
call request has already been submitted but it went to the wrong person.  Symptoms:
racing thoughts, anxiety, unable to concentrate, disturbing dreams, can't sleep.
Diagnosis: PTSD, major depressive disorder and schizophrenia."  (Doc. No. 21-1, pp. 17,
18.)  A TDCJ notation on the requests states: "Addressed 12/28/21."  *Id.* at 17.  A second
copy of the same I-60 contains a different TDCJ notation: "Issue was addressed on
12/28/21."  *Id.* at 19.

- A Form I-60 dated December 22, 2021, which Petitioner directed to the Medical Director.
Petitioner stated that "medical records reveal that I should not be taking venlafaxine."
Petitioner added: "Absolutely no 'mental health' medication should be prescribed to treat
me, as it will affect my pre-existing medical conditions i.e. (1) high blood pressure, (2)
diabetes (3) high cholesterol.  Please discontinue Venlafaxine."  (Doc. No. 22-1, p. 21.)

Although afforded the opportunity to do so, *see* Doc. No. 19, p. 2, Respondent did not
contest the authenticity of any of Petitioner's submitted documents.  Contrary to Petitioner's
contention, *see* Doc. No. 26, pp. 3-4, the Court now possesses the information it needs for
resolution of this case.

### I. Law.

#### 1. Due process requirements in prison disciplinary proceedings.

"Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a retraction justified by the considerations underlying our penal system." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974) (cleaned up). But prisoners are not wholly stripped of constitutional protections when imprisoned for a crime. "There is no iron curtain drawn between the Constitution and the prisons of this country." *Id*. at 555-56. In appropriate prison disciplinary proceedings, such as those where authorities seek to take away good time credits, state prisoners may claim the protections of the Due Process Clause of the Fourteenth Amendment. *See id*. at 556.

The existence of a constitutionally protected interest is of paramount importance. Where there is no constitutionally protected liberty interest at stake, the Due Process Clause does not afford protection to a prisoner in a disciplinary proceeding. *See generally Sandin v. Conner*, 515 U.S. 472 (1995). The Supreme Court established in *Wolff* that when a disciplinary hearing does implicate a constitutionally protected interest of an inmate, the inmate must be provided with advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken. *Id*. at 563-64. The inmate must be afforded an opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id*. at 566.

A prisoner has no due process right, however, to present irrelevant or cumulative evidence. *See Morgan v. Quarterman*, 570 F.3d 663, 668 (5th Cir. 2009) (upholding exclusion of requested witness testimony as irrelevant); *Reed v. Quarterman*, 129 F.3d 610, 610 n.7 (5th

Cir. 1997) (unpublished) (citing *Wolff*, 418 U.S. at 566-67); *Weatherly v. Davis*, No. 6:20-CV-00054, 2021 WL 4896877, at *5 (S.D. Tex. Aug. 13, 2021) (Hampton, M.J.), *adopted*, 2021 WL 4895726 (Oct. 19, 2021) (no due process violation where proposed evidence would have been irrelevant and cumulative).  Additionally, a prisoner must also demonstrate that he was prejudiced by any due process violation.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997).  Petitioner must therefore show that the outcome of his disciplinary proceeding would have been different had the due process violation not occurred.  *See Banuelos v. McFarland*, 41 F.3d 232, 234-35 (5th Cir. 1995).

Once the *Wolff* factors have been satisfied, the Court's only remaining task is to determine whether the result of the disciplinary hearing is supported by sufficient evidence.  "Disciplinary sanctions imposed by prison officials must be supported by 'some evidence' to be consistent with due process."  *Penn v. Lumpkin*, Civ. No. 4:21-2924, 2022 WL 2972266, at *4 (S.D. Tex. July 27, 2022) (Hanks, J.) (quoting *Morgan*, 570 F.3d at 668).  The goal of this standard is to balance the need to prevent arbitrary deprivation of protected liberty interests with the need to acknowledge institutional interests and avoid administrative burdens.  *Id.* (citing *Hudson v. Johnson*, 242 F.3d 534, 536 (5th Cir. 2001)).  Therefore, habeas courts do not disturb the findings of a prison disciplinary hearing unless they are arbitrary and capricious.  *Id.* (citing *Banuelos*, 41 F.3d at 234).  And habeas courts do not assess the weight of the evidence when reviewing prison disciplinary proceedings.  *Id.* (citing *Hudson*, 242 F.3d at 537).

### 2. *Exhaustion.*

Section 2254 generally requires that a prisoner exhaust his remedies in the state court before applying for federal habeas relief.  *See* 28 U.S.C. § 2254(b)(1)(A).  An exception to that exhaustion requirement exists when "there is an absence of available State corrective process."

28 U.S.C. § 2254(b)(1)(B)(i). The Texas Court of Criminal Appeals has "'refused to consider matters such as loss of good time credit, disciplinary proceedings and inmate classification by way of a writ of habeas corpus.'" *Schmidt v. Davis*, 768 F. App'x 281, 282 (5th Cir. 2019) (quoting *Ex parte Palomo*, 759 S.W.2d 671, 674 (Tex. Crim. App. 1988) (*en banc*)). Accordingly, because there is no available state corrective process, a Texas prisoner seeking to challenge the outcome of a prison disciplinary proceeding in habeas corpus proceedings "need exhaust only prison grievance procedures." *Schmidt*, 768 F. App'x at 282 (quoting *Anthony v. Johnson*, 177 F.3d 978, 978 (5th Cir. 1999)).

Petitioner was therefore required to exhaust any appeal of his administrative remedies in order to satisfy § 2254's exhaustion requirement. *See Rourke v. Thompson*, 11 F.3d 47, 49 n.6 (5th Cir. 1993). "It is not enough that the prisoner brought the same legal claim; rather, the prisoner must present the same substance to both the state administrative body and the federal court." *Mascitti v. Thaler*, 416 F. App'x 411, 414 (5th Cir. 2011) (citing *Burns v. Estelle*, 695 F.2d 847, 849-50 (5th Cir. 1983)); *see also Mason v. Director, TDCJ-CID*, No. 3:23-cv-598, 2023 WL 4091285, at *2 (N.D. Tex. Mar. 29, 2023), *adopted*, 2023 WL 4089395 (N.D. Tex. June 16, 2023). "The Fifth Circuit has stated that in order for an issue to be exhausted properly, it must be presented in a Step One grievance and then appealed to Step Two." *Sandoval v. Director, TDCJ-CID*, No. 6:22-cv-15, 2022 WL 18141393, at *4 (E.D. Tex. Nov. 14, 2022), *adopted*, 2023 WL 115571 (E.D. Tex. Jan. 4, 2023) (citing *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004)).

If a Texas state prisoner seeking federal habeas relief did not previously raise a claim in both a Step One and Step Two grievance, then that claim is procedurally defaulted. In all but the most extraordinary circumstances, a federal court will decline to review such a claim. *See*

*Nelson v. Lumpkin*, 72 F.4th 649, 656 (5th Cir. 2023) (citing *Shinn v. Ramirez*, __ U.S. __, 142 S. Ct. 1718, 1730 (2022)).  To obtain any federal habeas review, the prisoner must show cause to excuse his failure to comply with the Texas grievance exhaustion rule and actual prejudice resulting from the alleged constitutional violation.  *Id*. at 656-57 (citing *Davila v. Davis*, 582 U.S. 521, 528 (2017)).

### *J.   Analysis.*

In this federal habeas action, Petitioner's asserted issues center around his claim that he was not mentally responsible for his actions when he threw the food tray.  In connection with that claim, he asserts that he was denied due process at the disciplinary hearing because he was denied the opportunity to provide written documentation and witness testimony in support of his defense.  Petitioner further alleges that he was brought to the disciplinary hearing despite not having been "cleared" in advance by the Mental Health department.[6]

### 1.  *Petitioner's claims regarding loss of privileges and reduction in line class status, as well as his allegation of a breach of TDCJ policy, do not raise cognizable due process issues.*

Petitioner contends that he was wrongly denied due process at his disciplinary hearing. As a result, he says, he lost 120 days of good time credit and was stripped of certain privileges, including recreation, commissary, access to the offender telephone system, and contact visitation.  *See* Doc. No. 1, p. 5.  Additionally, his "custody level" was altered.  *See id*.

Prisoners charged with rule violations are entitled to certain due process rights when the disciplinary action results in a sanction that will impose upon a protected liberty interest.  *See*

---

[6]  Petitioner does not allege that any other due process right articulated in *Wolff* (such as adequate notice of the proceeding or a written report of the outcome) was violated.

*Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  Generally speaking, the only sanction that imposes upon a protected liberty interest is the loss of good time credits for an inmate whose release on mandatory supervision will be delayed by the loss of the credits.  *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000).  In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to custody in TDCJ's Correctional Institutions Division can serve the remainder of his sentence outside the prison under the supervision and control of TDCJ's Parole Division.  *See* Tex. Govt. Code § 508.147(a). Respondent acknowledges that Petitioner is eligible for release to mandatory supervision.  (Doc. No. 16, pp. 5-6.)  Accordingly, his loss of good time credits triggered due process protections, because good time credits guide eligibility for release to mandatory supervision and the Fifth Circuit has determined that Texas prisoners have a constitutional expectation of early release under that mandatory supervision program.  *See Malchi*, 211 F.3d at 957-58.  The observance of those due process protections in Petitioner's case is therefore discussed in greater detail below.

The other punishments Petitioner received, however, do not present such due process concerns.  Privileges, custodial classifications, and time-earning status, for example, are not protectable property or liberty interests, and Petitioner has no due process protection against their loss in a prison disciplinary proceeding.  *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) ("[Prisoners] have no protectable property or liberty interest in custodial classifications.")); *Malchi*, 211 F.3d at 959 (timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (imposition of commissary and cell restrictions does not raise constitutional concerns). Petitioner's complaints regarding his loss of privileges, custodial status or time-earning status are

18 / 27

therefore foreclosed by *Sandin*.  The district court should therefore DISMISS with prejudice

Petitioner's challenges to every sanction he received except for the loss of good time credits.

### 2. TDCJ's alleged violation of its own policy regarding psychiatric offenders does not raise a cognizable due process issue.

Petitioner alleges that TDCJ officials violated their own policy by bringing him before a

disciplinary hearing without first following special TDCJ procedures established for "psychiatric

offenders."  (Doc. No. 1, p. 7.)  The procedure that Petitioner references is a passage in TDCJ's

Offender Orientation Handbook dealing with disciplinary procedures:

> Special Procedures for Psychiatric Patients
>
> When a psychiatric offender is charged with a disciplinary infraction, psychiatric clearance shall be obtained before proceeding with the disciplinary.

(Doc. No. 15, p. 24.)

Petitioner is entitled to no relief.  The failure of prison officials to follow prison policies

does not itself rise to the level of a constitutional violation.  *See Williams v. Director, TDCJ-

CID*, No. 5:16-CV-95, 2017 WL 1337631, at *1 (E.D. Tex. Apr. 12, 2017) (citing *McFaul v.

Valenzuela*, 684 F.3d 564, 579 (5th Cir. 2012)).  Petitioner must demonstrate that a

constitutionally protected interest was violated.  As discussed below, he fails to do so.[7]  The

district court should therefore DISMISS this claim with prejudice.

---

[7] Petitioner also fails to demonstrate that he was a "psychiatric patient" or "psychiatric offender" as contemplated by the policy.  One of Petitioner's recurring themes in this habeas action is that he was never seen or properly treated by mental health professionals in the prison.  *E.g.*, Doc. No. 15, p. 14 ("I should have been on the mental health case-load.")  In any event, Petitioner articulates no prejudice resulting from any failure to obtain "psychiatric clearance" prior to his disciplinary hearing.

19 / 27

### 3. The district court should dismiss Petitioner's unexhausted claims with prejudice.

As explained above, Petitioner was required to exhaust all of his claims through TDCJ's two-step grievance process. He failed to do so with regard to several of his claims, so the district court should dismiss those claims with prejudice.

#### a. Denial of witness testimony.

In this § 2254 action, Petitioner alleges that his due process rights were violated because he was denied the opportunity to provide witness testimony from one or more mental health clinicians. (Doc. No. 1, p. 6.) In his Step One grievance, Petitioner raised – however perfunctorily – his claim that he was wrongfully denied the opportunity to present witness testimony at the disciplinary hearing. (Doc. No. 15, p. 14.) Petitioner failed, however, to raise that claim in his Step Two grievance. *See* Doc. No. 15, pp. 16-17. Petitioner therefore has failed to exhaust his denial-of-witness-testimony claim, and that claim should be dismissed from this federal habeas action. *See Sandoval*, 2022 WL 18141393, at *4 (citing *Johnson*, 385 F.3d at 515). Dismissal should be with prejudice, because Petitioner cannot now exhaust the claim through the grievance procedure: any such grievance would be untimely. *See* Doc. No. 15, pp. 24-25.

#### b. ADA and RA violation.

Relatedly, Petitioner alleges in this § 2254 action that TDCJ officials violated the Americans with Disabilities Act and Rehabilitation Act because they failed to provide a reasonable accommodation in the form of permitting the witness testimony from one or more mental health clinicians. (Doc. No. 1, p. 6.) This claim is also unexhausted: Petitioner did not raise any ADA or RA allegation in his Step One grievance. *See* Doc. No. 15, pp. 14-15. He

made mention of the ADA and RA in his Step Two grievance, *see id*. at 17, in the context of alleging a denial of the opportunity to submit written documentation.  Petitioner failed to raise the same claim in both grievance steps as he urges in this habeas action, so his ADA and RA claim should be dismissed as unexhausted.[8]  Dismissal should be with prejudice, because Petitioner cannot now exhaust the claim through the grievance procedure: any such grievance would be untimely.  *See* Doc. No. 15, pp. 24-25.

### 4. *Petitioner is entitled to no relief on his denial-of-evidence claim.*

Petitioner contends that TDCJ violated his due process rights by excluding documentary evidence that he asserts would have supported his defense to the assault charge at the disciplinary hearing.  Petitioner claims that his actions stemmed from what he terms a "psychotic episode," and that the documentary evidence would have supported his claim of mental illness. *See* Doc. No. 1, p. 6; Doc. No. 15, p. 14 ("I was not in my right mind and not responsible for my actions."); Doc. No. 26, p. 3 ("The Petitioner had a psychotic episode which led up to the alleged assault.").  Respondent counters that intent was not an element of Petitioner's offense, and thus that a defense of lack of mental responsibility was not available to him.  (Doc. No. 25, p. 7) (comparing definition of Petitioner's offense with definitions of other offenses that specifically require intent, such as escape).  Whether Respondent's contention is correct or not, the undersigned concludes that Petitioner is entitled to no relief.

In the disciplinary action, Petitioner was initially charged with "assaulting another person, who is not an offender, with a weapon that results in a non-serious injury or no injury." (Doc. No. 15, pp. 6, 21.)  At the hearing, with Petitioner's concurrence, the disciplinary hearing

---

[8]  Additionally, Petitioner's ADA and RA claim is not cognizable in this habeas proceeding in any event, because his claim does not impact the fact or duration of his confinement.  *Williams*, 2017 WL 1337631, at *2 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Richardson v. Fleming*, 651 F.2d 366, 372 (5th Cir. 1981)).

21 / 27

officer altered the charge to "assaulting another person, who is not an offender, without a weapon that results in a non-serious injury or no injury." *Id*. at 10, 21.  The term "assault" is not defined in TDCJ's Disciplinary Rules and Procedures for Offenders, the publication in which disciplinary offenses are listed.  *See* Doc. No. 15, p. 21.  Because Petitioner's disciplinary hearing occurred within the Texas state prison system, the undersigned consulted Texas law as a general reference for its due process analysis here.  That reference, however, was not especially useful, because none of the Texas Penal Code's three definitions of "assault" align with TDCJ's description of Petitioner's offense.  TDCJ's definition, unlike the Texas Penal Code, does not require the infliction of any bodily injury,[9] the threat of bodily injury,[10] or any physical contact.[11,12]  Black's Law Dictionary, meanwhile, defines assault as the "threat or use of force on another that causes that person to have a reasonable apprehension of imminent harmful or offensive contact."  *Assault*, Black's Law Dictionary (11th ed. 2019).  Respondent urges that because TDCJ's description of Petitioner's offense does not specify any intent element, the offense did not require proof of Petitioner's mental state and thus that any mental health documentation was irrelevant.  (Doc. No. 25, p. 7.)  The undersigned is dubious of that assertion, but ultimately need not decide the question because Petitioner's excluded documentary evidence would not have negated any intent element.

---

[9]  *Cf.* Tex. Penal Code § 22.01(a)(1) (intentionally, knowingly, or recklessly causing bodily injury to another).

[10]  *Cf.* Tex. Penal Code § 22.01(a)(2) (intentionally or knowingly threatening another with imminent bodily injury).

[11]  *Cf.* Tex. Penal Code § 22.01(a)(3) (intentionally or knowingly causing physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative).

[12]  The term "assault" carries the same definition for both criminal and civil assaults.  *See Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 649 (Tex. Ct. App. – Houston [1st Dist.] 2005, no pet.).

Texas does not recognize diminished capacity as an affirmative defense.  *See Jackson v. State*, 160 S.W.3d 568, 573 (Tex. Crim. App. 2005).  "Texas law, like that of all American jurisdictions, presumes that a criminal defendant is sane and that he intends the natural consequences of his acts."  *Crumley v. State*, 670 S.W.3d 799, 806 (Tex. Ct. App. – Dallas 2023) (citing *Ruffin v. State*, 270 S.W.d3d 586, 591 (Tex. Crim. App. 2008)).  Insanity is the only recognized defense pertaining to mental disease, defect, or abnormality.  *See Ruffin*, 270 S.W.3d at 593; *see* Tex. Penal Code § 8.01(a).  While a defendant may present evidence to negate a *mens rea* element, *see Jackson*, 160 S.W.3d at 574, such evidence may be excluded as irrelevant if it does not truly negate the required *mens rea*.  *Ruffin*, 270 S.W.3d at 596; *see also id*. at n.32 (citing cases).

Here, the disciplinary hearing record reflects Petitioner asserted that he was hearing "ticking noises, as [the officer] came closer there was a bomb inside the tray.  I didn't want to touch it.  I picked it up and threw the tray through the slot."  (Doc. No. 15, p. 10; *see also id*. at 5.)  Petitioner states in this habeas action that he was attempting to raise a defense of insanity. (Doc. No. 1, p. 6 ("The petitioner's conduct stemmed from a psychotic episode."); Doc. No. 15, p. 14 ("I was not in my right mind and not responsible for my actions.").)  But the documents that Petitioner claims he was attempting to introduce at the hearing do not reflect that Petitioner had a severe mental disease or defect and that as a result he did not know that his conduct was wrong.  *Cf*. Tex. Penal Code § 8.01(a).  Petitioner's proffered documents simply contain his own self-serving statements about his perceptions and self-diagnoses of his own mental condition. None of Petitioner's documents reflect any diagnosis by anyone that Petitioner actually suffered from any psychiatric affliction.[13]  Perhaps even more importantly, none of Petitioner's (or

---

[13]  In one document, Petitioner asserted that Dallas County Jail and TDCJ records indicate that he was diagnosed

anyone else's) statements in those documents suggest that Petitioner has ever been unable to discern the wrongfulness of any of his conduct because of any mental health issue. *See* Doc. No. 21-1. Petitioner's documentary evidence would not have negated the required level of intent, and the disciplinary hearing officer therefore did not violate Petitioner's due process rights in declining to consider those documents as irrelevant. Likewise, because Petitioner's documents were irrelevant, he fails to demonstrate the required prejudice.

The Constitution required due process at Petitioner's disciplinary hearing, not error-free decision-making. *See McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir. 1983). Petitioner was not denied due process at the disciplinary hearing. Petitioner was not categorically forbidden from presenting documentary evidence. *Cf. Pace v. Oliver*, 634 F.2d 302, 305 (5th Cir. 1981) (absolute bar on use of documents in disciplinary hearings held to violate due process). Petitioner was afforded the opportunity to present documents,[14] but he had no due process right to present irrelevant documents. Petitioner was permitted to present a defense: as the counsel substitute's report notes, Petitioner acknowledged that he was informed of his rights to call and question witnesses, present documentary evidence, be represented by a counsel substitute, and call and question the charging officer at the hearing. (Doc. No. 15, p. 8.) Petitioner made a statement on his own behalf, and his counsel substitute made a statement on Petitioner's behalf. *See id*. at 10. Even if the hearing officer incorrectly excluded Petitioner's proffered documents,

---

with post-traumatic stress disorder, major depressive disorder with psychotic features, and schizophrenia. (Doc. No. 21-1, p. 2.) Petitioner did not request prior to the disciplinary hearing that any such documentation be produced, and he did not attempt to introduce any such documentation himself. To the contrary, Petitioner states that he already had all the documents he needed for the hearing, and thus did not ask TDCJ to produce anything further. (Doc. No. 18, p. 1.)

[14] *See* TDCJ Disciplinary Rules and Procedures for Offenders, p. 16, available at https://www.tdcj.texas.gov/documents/cid/Disciplinary_Rules_and_Procedures_for_Offenders_English.pdf (last visited Oct. 3, 2023).

Petitioner fails to show how he was prejudiced, because a review of those documents reveals that they do not negate Petitioner's guilt of the charged offense and in any event are merely cumulative of statements Petitioner made at the hearing.

All that remains is to determine whether the hearing officer's decision was supported by evidence. *See Morgan*, 570 F.3d at 668. It was. To determine that Petitioner committed the charged conduct, the hearing officer had the benefit of the charging officer's statement and Petitioner's guilty plea.

The district court should conclude that Petitioner received the process he was due at his disciplinary hearing and should reject Petitioner's request for habeas relief.

### K. *Conclusion and recommendation.*

The district court should DISMISS with prejudice Petitioner's claim that TDCJ officials failed to follow their own policy by obtaining clearance from the mental health department prior to Petitioner's disciplinary hearing and Petitioner's challenge to the reduction in his time-earning classification and his loss of privileges, because those claims are not cognizable on federal habeas review. The district court should DISMISS with prejudice as unexhausted Petitioner's claims that he was denied the opportunity to call witnesses in his defense and that TDCJ officials violated the ADA and RA. Finally, the district court should DENY Petitioner's claim that he was wrongly denied the opportunity to present documentary evidence at his hearing. The district court should DISMISS this action in its entirety.

### L. *No certificate of appealability should issue.*

An appeal may not be taken to the court of appeals from a final order in a habeas proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). Rule 11 of the Rules Governing Section 2254 Cases requires a district court to

issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability "may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This determination requires an overview of the claims in the petition and a general assessment of their merits. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). The petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Id.* The district court may deny a certificate of appealability without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

Here, Petitioner fails to show that reasonable jurists would find the Court's resolution of the due process issue debatable or wrong. Therefore, the district court should deny a certificate of appealability.

**M. Notice.**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **14 days** after being served with a copy of this Memorandum and Recommendation, any party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions that are accepted by the district court.  *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996)(*en banc*).

       SIGNED on October 10, 2023.

MITCHEL NEUROCK
United States Magistrate Judge